The **TRUSTEES OF THE AMALGAMATED INSURANCE FUND, Plaintiff,**

v.

**ABRAHAM ZION CORP., Lebow Bros., Inc., Harry Fischer, Corp., Koko Rainwear, Corp., V–Line Clothes Co., Inc., and Jason Gibbs, Inc., Defendants.**

**No. 85 Civ. 9148.**

United States District Court, S.D. New York.

June 6, 1988.

Mark Schwartz and Nathaniel E. Leserowitz, New York City, for plaintiffs.

Leonard Zack, Philadelphia, Pa., for defendants.

ORDER

EDELSTEIN, District Judge:

The plaintiff, The Trustees of the Amalgamated Insurance Fund ("Fund"), claims that defendants Abraham Zion Corp., Lebow Bros., Inc., Harry Fischer, Corp., Koko Rainwear, Corp., V–Line Clothes Co., Inc., and Jason Gibbs, Inc. ("Zion Group"), owe $129,310.66 in withdrawal liability pursuant to the Employee Retirement Income and Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq., as amended by the Multiemployer Pension Plan Amendments Act of 1980 (collectively "MPPAA"), 29 U.S.C. § 1381, et seq. Plaintiff contends that the defendants were all under the common con-

---

trol of Abraham Zion Corporation and, as such, jointly and severally liable; defendants dispute this contention. The Fund has moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The court finds, for the reasons stated below, that there is no genuine issue of material fact to be determined by the court. The court further finds that the plaintiff has satisfied its burden under the applicable law. Accordingly, plaintiff's motion is granted.

The MPPAA imposes "withdrawal liability" on an employer that withdraws from a multiemployer plan. The withdrawal liability is intended to fund the withdrawing employer's proportionate share of the plan's unfunded vested benefits. *See* 29 U.S.C. §§ 1381(b)(1), 1391. The MPPAA and regulations promulgated thereunder provide a procedural framework within which to assess, collect, and challenge withdrawal liability.

The entity administering the plan, that is, the sponsor, must calculate the withdrawal liability and notify the employer "as soon as practicable" after an employer withdraws from a multiemployer plan. *See* 29 U.S.C. § 1399(b)(1). The employer has 90 days after receiving notice to request a review of the liability, identify any inaccuracies, and furnish additional information. *See id.* § 1399(b)(2)(A). After a reasonable review, the sponsor must notify the employer of its decision, the basis of that decision, as well as the reasons for any change in its prior assessment. *See id.* § 1399(b)(2)(B). If the employer fails to make a required payment, it will be in default if such payment is not made within 60 days of written notification by the sponsor. *See id.* § 1399(c)(5). Such default enables the sponsor to "require immediate payment of the outstanding amount of an employer's withdrawal liability, plus accrued interest." *Id.*

29 U.S.C. § 1401 provides: *"Any dispute* between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 4201–4219 [29 U.S.C. §§ 1381–1399] *shall* be resolved through arbitration." 29 U.S.C. § 1401(a) (emphasis added). Such arbitration must

be requested within 60 days after the earlier of:

(1) the date of notification to the employer required by 29 U.S.C. § 1399(b)(2)(B), or

(2) 120 days after the employer's request under 29 U.S.C. § 1399(b)(1).

Arbitration decisions are reviewable by the district court, although the arbitrator's findings of fact are entitled to a rebuttable presumption of correctness. *See* 29 U.S.C. § 1401(c).

The following facts are not in dispute. On June 1, 1985, the Fund in this case notified the defendants of the assessed withdrawal liability, the first installment of which was due September 1, 1985. On September 4, 1985, the Fund, pursuant to 29 U.S.C. § 1399(c)(5)(A), notified defendants of the failure to make the required payment. Such payment was never made. Further, the defendants never sought arbitration pursuant to 29 U.S.C. § 1399(b)(1)(B).

The defendants, in opposition to plaintiff's motion, contend that there is a genuine issue as to whether the defendants were all part of a group of trades or businesses under common control as defined by 29 U.S.C. § 1301(b)(1). According to defendants, this factual issue is material because it would determine whether Abraham Zion Corp. is liable to the Fund, for liabilities of the other defendants. The plaintiffs respond with the argument that such a dispute should have been determined by arbitration and by failing to do so the defense has been waived. Defendants counter that the determination of whether the Zion Group was under common control will require statutory interpretation and therefore is not a proper factual issue to be decided by arbitration.

The resort to arbitration required by the MPPAA is akin to an administrative remedy that must, as a general rule, be exhausted before seeking redress in the courts. *See T.I.M.E.–DC, Inc. v. Management–Labor Welfare and Pension Funds,* 756 F.2d 939, 945 (2d Cir.1985). Nevertheless, the Second Circuit has held that exhaustion of the arbitration remedy is not required when the parties raised no questions of

fact or contract interpretation and statutory construction is the main issue to be resolved. *See id; see also ILGWU National Retirement Fund v. Levy Bros. Frocks, Inc.*, 846 F.2d 879, 886 (2d Cir.1988). Defendants maintain that this case would have presented to the arbitrator only an issue of statutory construction.

29 U.S.C. § 1301(b)(1) incorporates the regulations issued by the Secretary of the Treasury under 26 U.S.C. § 414(c) to determine whether a group of entities is under common control. These regulations set forth, in a fairly detailed and straightforward manner, the requirements of a control group. *See* 26 C.F.R. 11.414(c)–1 to 11.414(c)–5. Defendants point to no ambiguity in or dispute over the meaning of either the statute or the regulations that would require any interpretation. To determine whether a group of entities is under common control involves a largely factual determination. Applying the regulations to the facts is a straightforward matter not requiring any statutory interpretation.

Defendants position with respect to plaintiff's summary judgment motion belies their contention that the control group determination presents an issue of statutory construction not properly before an arbitrator. Defendants maintain that there are factual issues to be litigated in this court with respect to the control group determination. Nevertheless, defendants simultaneously contend that arbitration would have been inappropriate because the question was entirely one of statutory interpretation. These two positions are clearly inconsistent.

MPPAA's arbitration provision, 29 U.S.C. § 1401, is to be broadly construed. *See Levy Bros., supra,* at 885–886. Thus, because it is a factual question, the defendants should have submitted this dispute over withdrawal liability to arbitration. The defendants thus have failed to exhaust the available administrative remedies under the MPPAA. *See T.I.M.E.–DC, supra,* 756 F.2d at 945. Accordingly, the amount of defendants' liability, therefore, has become fixed and any defense it may have had based on the factual control group determination is waived. *See New York State*

*Teamsters v. St. Lawrence Transit Mix,* 612 F.Supp. 1003, 1006 (N.D.N.Y.1985). The defendants therefore are in default of their obligation to pay their withdrawal liability in the amount determined by the sponsor. Accordingly, the court finds that there is no genuine issue of material fact that remains to be litigated. *See* Fed.R. Civ.P. 56.

### CONCLUSION

For the foregoing reasons the plaintiff's motion for summary judgment is granted. Plaintiff is to submit a judgment.

SO ORDERED.